**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:22-CV-20537-RNS**

**JOHN PATE**

        **Plaintiff,**

**vs.**

**CITY OF OPA-LOCKA, FLORIDA, ET AL.**

        **Defendants.**

_____/

## <u>VERIFIED AMENDED COMPLAINT</u>

Plaintiff, **JOHN PATE ("PATE"),** through undersigned Counsel, hereby files this Verified Amended Complaint for Breach of Contract and Violations of Florida's Whistle-blower Act, against the Defendant **CITY OF OPA LOCKA,** and in support thereof would show:

### I.     <u>INTRODUCTION</u>

1. Plaintiff **JOHN PATE** is the former City Manager for the City of Opa-Locka.

2. The City of Opa Locka is a Florida Municipal Services Corporation authorized to operate as a municipality in the State of Florida.

3. **PATE** was hired as Opa Locka City Manager on September 25th, 2019, and improperly and illegally terminated for prohibited reasons and in violation of both his employment agreement and Florida Statute 112.3187 on January 13th, 2022.

4. **PATE** reported improper conduct, including malfeasance, misfeasance and fraud on the part of the higher-ups in the City, including but not limited to the former Mayor and the current Mayor and Commission.

5. **PATE** also participated in investigations regarding malfeasance, misfeasance, fraud, illegality and misconduct with the City Commission, City Attorney, Department of Human Recourses, Opa Locka Police Department and Miami-Dade Commission on Ethics and Florida Inspector General.

6. Pate reported illegality and misconduct to the Mayor and Commission, Human Resources, the Miami Dade Commission on Ethics and the Inspector General and Florida State Oversight Board.

7. Subsequent to **PATE** submitting written, signed reports of malfeasance, misfeasance, and mismanagement on the part of City officials to the City and the Miami Dade Ethics Commission, and participating in investigations of same, he was retaliated against in violation of Florida's Whistleblower Act, Chapter 112.3187 Florida Statutes.

8. The Retaliation against Pate included being denied benefits and then being illegally fired for prohibited reasons in violation of Florida Statute 112.3187.

9. Among other things, Pate reported the following misconduct:


A. **VIOLATIONS OF THE FLORIDA SUNSHINE LAW BY THE MAYOR AND CITY COMMISSIONERS;**

10. Mayor Veronica Williams and Vice Mayor John Taylor violated the Florida Sunshine Law by speaking by phone to discuss and plan the termination of the City Manager;

**B.  IMPROPER RECEIPT OF GIFTS AND SPECIAL FAVORS BY CITY OFFICIAL;**

11. Mr. Pate explicitly advised City Officials about the impropriety of them accepting gifts above the legal limit;

**C.  ILLEGAL AND IMPROPER POLICITCAL INFLUENCE IN PERSONAL MATTERS**

12. Mr. Pate was constantly harassed by Mayor Pigatt, the Late Commissioner Burke, and the current Mayor and City Commission, including Vice Mayor Taylor, to make personnel and administrative decisions that violated the City Charter.

13. From approximately from October 2019 – to January 2022 Pate both reported in written and signed complaints and participated in investigations regarding, but not limited to the following:

14. That the Mayor and City Commissioners interfered with the day to day operation of the city by directing him to discipline, terminate, and negatively impact employees. Section 4.2 of the City of Opa Locka Charter and his contract prohibits such interference in City Administration.

15. The Mayor and Commission interfered with the new Chief of Police search by

contacting candidates directly and attempting to influence his decision as the hiring manager. The Mayor and Commissioners explicitly contacted and procured candidates for City Police Chief in violation of the provisions of the City Charter of Opa Locka that made it illegal for political officials to have direct contact with staff and interfere in operations including hiring and firing.

16. In violation of Section 4.2 and other provisions of the City charter, illegally Directed Pate to terminate HR Director Kierra Ward in violation of the City Charter and because of Pate and Ward's failure to engage in patronage.

17. Illegally Directed Pate to terminate Police Chief James Dobson because Dobson as Police Chief refused to condone misconduct and also refused to allow political influence over the Police Department.

18. Directed Pate to hire friends, family, and sorority members to be senior staff during his administration.

19. Pate reported Sexual harassment  by Mayor Veronica Williams as she referred to Pate be as her"husband".

20. Directed was by Commissioners Bass, Dominguez, and Taylor to misappropriate taxpayer funds for special events and activities that should have been considered political activity.

21. Was directly told by Commission Vice Mayor Taylor that if I did not terminate any further investigation into Taylor's brother's misconduct that he would be fired.

22. Was directed by Mayor Williams and Commissioner Bass to invest taxpayer's dollars in 2 million dollars of ARPA funding to go towards a Darwin Williams

development project in the city. Pate denied the request, refused to participate and was adversely impacted by not being restated to his rightful position as City Manager.

23.  Pate Informed the State of Florida and Chief Inspector General of illegal and unethical conduct of elected officials on multiple occasions and participated in investigations regarding this conduct.

24.  Pate was directly harassed and placed in a hostile work environment as a result of the repeated attempts of elected officials to violate the Charter and the laws of the State of Florida and the United States of America.

25. Pate directly overheard a conversation that Mayor Williams and Commissioner Taylor had critiquing his performance, belittling him, polling one another, and orchestrating the votes that ultimately got me fired. This was all in explicit violation of the Florida Sunshine Law and a crime.

26. Among other things, the Late Commissioner Burke and Mayor Pigatt repeatedly pressured **PATE** to terminate Police Chief James Dobson because of Dobson's refusal to make police personnel moves at their direction in violation of the City Charter, and in part because of Dobson's refusal to offer special favors, including to relatives of Mayor Pigatt who had been stopped and cited by police.

27. Pate also participated in investigations of the City's finances in conjunction with the City Commission and the State of Florida Inspector General's office and Oversight Board.

28. Pate had a contract with the City attached as Exhibit "A".

29. For the prohibited factors mentioned the City breached multiple provisions of **PATE's** contract.

30. The City breached provisions 1F and 2A by interfering and refusing to permit **PATE** to manage the City Government. Section 1 and 2 of the contract are clear that Pate was to have the authority to manage the day to day operations of the City and to hire and fire and organize the staff.

31. Specifically, the former, Mayor and current Mayor and City Commission interfered with the explicit provisions of Pate's contract that required that Pate be allowed to manage the daily operations of the City without interference.

32. The City violated provision 3A by terminating **PATE** without legitimate reasons and without adequate and required notice. In fact, Pate received no due process and no notice at all.

33. The City violated section 5 in its entirety by never conducting the required evaluations and guidance.

34. The City Commission never provided Pate with the evaluations and feedback explicitly required under the contract. Specifically, Section 5.

## <u>PATE'S ILLEGAL TERMINATION</u>

35. On January 11th, 2022, the brother of Vice Mayor John Taylor was at fault in a car accident in Hollywood, Florida.

36. Police Officer Taylor rear ended a car while he was improperly using a City Police vehicle without permission.

37. At the time, Officer Taylor's license was invalid and had been suspended twice.

38. After the accident, **PATE** received a phone call from the father of Vice Mayor John Taylor, requesting on behalf of the family that **PATE** ignore Officer Taylor's transgressions and not follow the appropriate mandated procedures for police misconduct.

39. **PATE** refused to cover up the bad act, and began to actively participate in and direct the ongoing investigation into Officer Taylor's misconduct;

40. **PATE** specifically asked that an investigation be done as to officer Taylor's improper conduct;

41. **Prior to his termination Pate sent a signed and written complaint to both the Mayor and City Commission and Miami Dade Commission on Ethics explicitly advising that he was being subjected to whistleblower retaliation because of his refusal to cover up the misconduct of the Vice Mayor's brother; This is attached as Exhibit "B";**

42. On January 12th, after a City Commission meeting, Vice Mayor Taylor advised **PATE** that he intended to fire him, for, among other things, **PATE's** refusal to condone his brother's misconduct;

43. The same day Taylor scheduled a meeting for January 13th to fire **PATE**;

44. Vice Mayor Taylor then violated the Florida Sunshine Law by calling Mayor Williams and other Commissioners to orchestrate the vote;

45. On January 13th, 2022, **PATE** was fired with no Due Process and no proper notice.

## JURISDICTION

The Amended Complaint  contains only Florida State Law claims that would require the Court to continue to exercise Supplemental Jurisdiction now that the Amended Complaint does not contain Federal Claims.

## COUNT I
## (VIOLATION OF FLORIDA STATUTE 112.3187)
## (AGAINST THE CITY)

46. Plaintiff hereby incorporates Paragraphs 1 through 45 as if fully set forth herein;

47. Plaintiff is an employee and protected party as that term is defined in Florida Statute 112.3187;

48. The City of Opa Locka is a political subdivision of the State of Florida and is a local government agency as those terms are defined in Section 112.3187.

49. Plaintiff participated in investigations of misfeasance and malfeasance and gross mismanagement.

50. Plaintiff also filed written and signed complaints and cooperated in investigations with Miami Dade Ethics and the Inspector General.

51. Plaintiff also filed and signed written complaints about this misconduct;

52. Plaintiff satisfied all conditions precedent and exhausted his administrative remedies.

53. Any further efforts would be entirely and completely futile for two reasons. First, Pate was fired directly by the City Commission that is the ultimate authority in the City and made clear that Pate had no further recourse. Second, the purported whistleblower process  was a sham that did in practice not provide for independent review, but in fact consisted of the City Attorney who is adverse to the whistleblower and who represents

8

the City, taking adverse discovery depositions.

54. In retaliation for making these disclosures and for his role in becoming a Whistle-blower under Florida Statutes, the CITY retaliated against Plaintiff by firing him.

**WHEREFORE,** for all of the above and foregoing reasons, it is respectfully requested that this Court order the **CITY** to reinstate Pate to his position as City Manager, compensate the Plaintiff for his lost wages, benefits, and other lost remuneration, pay him compensatory damages and further to order that Plaintiff be reimbursed by the **CITY** for all costs and attorneys' fees expended by him in the pursuit of this lawsuit and to receive any other damages allowed under Florida law.

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT**</u>

55.  Plaintiff re-alleges paragraphs 1 through 45 as if fully set forth herein.

56. Plaintiff had a contract with the City;

57. The City breached the terms of the contract as outlined herein;

58. As a result, Plaintiff was damaged.

**WHEREFORE,** Plaintiff demands judgment for damages, punitive damages and any and all relief available under the law.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues triable as of right by jury.

Respectfully submitted,

**MICHAEL A. PIZZI, JR., P.A.**
*On behalf of the Plaintiff*
Florida Bar No. 79545
6625 Miami Lakes Drive East - Suite 316
Miami Lakes, Florida 33014
Telephone:    786 594 3948
FAX:             305 777 3802
E-Mail:         mpizzi@pizizlaw.com

SELTZER MAYBERG LLC
*Attorneys for Plaintiff*
10750 NW 6th Court
Miami, Florida 33168
Telephone: (305) 444-1565
Facsimile: (305) 444-1665
Menachem@Smfirm.com

## VERIFICATION

I declare under penalty of perjury under the laws of the State of Florida and the United States
of America that I have read this Verified Complaint and that the facts in the foregoing
Verified Complaint are true and correct. Executed this 11th day of April 2022.

John E. Pate

# EXHIBIT A

## CITY MANAGER EMPLOYMENT AGREEMENT
## BETWEEN

## JOHN E. PATE

## AND

## THE CITY OF OPA-LOCKA, FL

**THIS EMPLOYMENT AGREEMENT** hereinafter called this "Agreement", is made and entered into as of the 25th day of September, 2019, by and between the City Commission, hereinafter refened to as the "City" or "Commission", of the City of Opa-locka, a political subdivision of the State of Florida, hereinafter called the "Employer", and John E. Pate, hereinafter referred to as "Employee".

## W-I-T-N-E-S-S

**WHEREAS,** the Commission desires to employ the services of John E. Pate, as City Manager of the city, hereinafter referred to as the "Manager", pursuant to the terms of the Opa-locka City Charter, hereinafter referred to as the "Charter", the Opa-locka City Code of Ordinances, hereinafter referred to as the " City Code", the Opa-locka City Administrative Code, hereinafter referred to as the "Administrative Code", and all statutes, laws and constitutional provisions applicable to the position of Manager; and,

**WHEREAS,** it is the desire of the Commission to provide certain benefits and establish certain conditions of employment for Employee as the Manager in accordance with this Agreement; and,

**WHEREAS,** it is the desire of the Commission to secure and retain the services of Employee as the Manager and to provide inducement for him to remain in such employment; and

**WHEREAS,** Employee desires to accept employment as the Manager in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, the parties agree as follows:

### Section 1.  Employment

A. The Commission hereby hires and appoints John E. Pate as the Manager. under the terms established herein. to perform the duties and functions specified in the Charter, the City Code, the Administrative Code, and all statutes, laws, constitutional provisions and other city ordinances. regulations, resolutions and policies applicable to the position of Manager, and to perform such other legally permissible and proper duties and functions as the Commission shall assign from time to time.

B. The Commission's employment of Employee as the Manager shall be effective October 15, 2019 through October 14, 2023. This Agreement shall remain in effect until terminated by the Commission or by the employee as provided herein.

C. Nothing in this Agreement shall prevent, limit or otherwise interfere with the right of the Commission to terminate the services of the Manager at any time, subject only to the provisions set forth in Section 3 of this Agreement.

D. Nothing in this Agreement shall prevent, limit or otherwise interfere with the right of the Manager to resign at any time from his position as the Manager, subject only to the provisions set forth in Section 4 of this Agreement.

E. It shall be the duty of the City Manager to employ, direct, assign, reassign, evaluate, and accept the resignations of all the employees of the City under his supervision consistent with the City rules, policies, ordinances, chmier, county, state and federal law.

F. It shall be the duty of the City Manager to organize, reorganize and arrange the staff of the City and to develop and establish internal regulations, rules, and procedures which the City Manager deems necessary for the efficient and effective operation of the City consistent with the lawful City directives, policies, ordinances, city charter, county, state and federal law.

G. The City Manager shall perform the duties of City Manager of the City with reasonable care, diligence, skill and experience.

**Section 2. Duties and Obligations**

A. The Manager shall have the duties, responsibilities and powers of said office under the City of Opa-locka Charter, Code of Ordinances, Administrative Code, and all statutes, laws, constitutional provisions and other city ordinances, regulations, resolutions and policies applicable to the position of Manager. The Manager shall carry these out in a professional and competent manner.

B. The Manager shall remain in the exclusive employ of the Commission and shall devote all such time, attention, knowledge and skills necessary to faithfully perform his ____ responsibilities, and to exercise his powers under this Agreement, ha___ng employment whatsoever. He may. however. engage in educational and professional activities and other employment activities upon receipt of approval by the Commission, provided that such activities shall not interfere with his primary obligation to the Commission and City as the Manager. The Manager shall dedicate no less than an average of forty (40) hours per week in the performance of his duties as Manager hereunder.

C. In the event the Manager shall serve on any appointed or elected board of any professional organization, or serve on any committees related to his professional activities, in the event any monies are paid, or gifts received. by him related to such service. such money or property shall be paid over to or delivered to the City. unless otherwise provided by the Commission.

**Section 3. Termination and Severance Pay**

A. <u>Termination without Cause.</u> The Commission may, at any time whatsoever, terminate the employment of the Manager, without cause, by an affirmative vote, upon reasonable prior notice to the Manager, of not less than three members of the Commission. If such event should occur, the Manager will be given written notice of the decision of the Commission not less than 10 days prior to the effective date of the termination. Upon such termination, The Manager will be entitled to: 1) a severance payment equal to twenty (20) calendar weeks of base salary; 2) a lump sum payment at his then-hourly rate of base salary as Manager for all annual leave hours accumulated by his but unused as of the date of termination, not to exceed the maximum accrual provided in the City's Personnel Policies Manual applicable to all other non-union employees of the Commission; and 3) continuation of the Manager's health insurance under Section 9 at City expense for a period of one hundred and eighty (180) calendar days following the date of termination in accordance with, and within the limitations of, COBRA and the rates applicable thereunder. The Commission shall not continue any benefits after termination that are directly connected with being the City Manager. In other words, the Commission shall continue paying insurances and pension but not a car allowance, phone, and the like.

B. <u>Termination for Cause.</u> The Commission may also, for cause, terminate the employment of the Manager at any time whatsoever, by affirmative vote, of not less than three (3) members of the City Commission. The Manager shall be entitled to a hearing if, within five (5) business days of termination for just cause, he so requests in writing to the City Attorney. In the event the Manager's employment is terminated for cause, the City shall be under no obligation to pay severance pay described under subsection A (1) or the continuation of health insurance described under subsection A (3) hereof. The term "for cause" shall be deemed to include: gross negligence in the handling of City affairs; willful violation of the provisions of law; willful disregard of a direct order, demand, or policy of the Commission; conduct unbecoming a public employee; illegal or habitual drug abuse; arrest; conviction of a felony; conviction of any crime involving moral turpitude or relating to official duties; or violation of the Florida Ethics Code. For the purpose of this subsection, if the Manager pleads guilty or nolo contendere or is found guilty of a felony, he shall be deemed to have been convicted, notwithstanding a suspension of sentence or a withholding of adjudication.

**Section 4.  Resignation**

A. In the event the Manager voluntarily resigns his position, he thereby agrees to give the City not less than sixty (60) days· written notice prior to effective date of any voluntary resignation, unless the parties agree otherwise.

B. In the event the Manager voluntarily resigns his position, the City shall not pay severance pay described under subsection 3 A(1) or pay for the continuation of health insurance described herein.

**Section 5. Compensation and Annual Review**

A. The City shall pay the Manager, for his service, a[n ann]ual base salary of $169,700, payable in equal installments pursuant to City policy and m[ay in]crease it from time to time as herein provided. At any time, the Commission may agr[ee to] increase the base salary and/or other benefits received by the Manager in such amounts [and] to such extent as the Commission may determine to be desirable in its sole discretion.

B. Beginning in 2020, as determined by the Commission, the Commission sha[ll r]eview and evaluate the performance of the Manager at least once every fiscal year between [Ma]rch 1st and the immediately following April 30th. Said review and evaluation shall ass[ess] the Manager's performance of all duties and responsibilities, and his exercise of all powe[r f]or which he is responsible under this Agreement during the immediately preceding per[iod]. Failure by the Commission to conduct such a review and evaluation in any given year [of] years shall not be considered a breach of this Agreement.

C. Annually, the Commission and the Manager shall jointly define such goals and performance objectives that they may determine necessary for the proper operation of the City and for the attainment of the Commission's policy objectives, and shall fmiher establish a relative priority among those various goals and objectives, and said objectives and goals shall be reduced to writing. Objectives and goals hereunder shall generally be attainable within the time limitations specified and shall take in to account the City's annual operating budget and capital budget and appropriations provided thereunder.

**Section 6. Retirement**

The City shall enroll the Manager in the Senior Management Service employee classification within the FRS (the Florida Retirement System) plan. Furthermore, the City shall contribute the employee share of 3% on behalf of the Manager.

**Section 7. Communications Equipment**

The City Manager is required to be on call for twenty-four hour service. In recognition thereof:

A. The City shall issue a city owned cell phone, computer and provide other mobile connectivity that provides Internet to the Manager to be used solely for City business purposes.

**Section 8. Other Benefits**

A. Except as may be otherwise limited under the terms of this Agreement, the Manager shall be entitled to earn, use, accrue and be compensated for 15 days of sick leave and 25 vacation day per year upon execution of this agreement. The Manager shall further be provided a bank of 7.5 days of sick and 14.5 days of vacation leave upon execution of this agreement.

4

B. The Commission, in consultation with the Manager, may fix any such other terms and conditions of employment as it may determine from time to time relating to the performance of the Manager, provided that such terms and conditions are not inconsistent with or in conflict with the provisions of this Agreement or other applicable law.

## Section 9. Insurance

A. The Commission shall provide term life msurance as 1s provided to other non-union employees of the Commission.

B. The Commission shall provide to the Manager medical, dental, and any other offered insurance plan on the same terms and conditions as are available to all other non-union employees of the Commission. The Commission shall further provide for the Manager and his dependent(s) health, dental, and any other available insurance benefit offered at no cost of the Manager.

## Section 10. No Reduction of Benefits

The Commission shall not at any time during the term of this agreement reduce the salary, compensation or other financial benefits of the Manager, except and to the degree and extent such reduction is also imposed across-the-Commission for all non-union employees of the Commission.

## Section 11. General Business Expenses

The Commission agrees to budget pay for the professional travel and state authorized expenses of the Manager necessary for his participation in professional development training applicable to his duties as a City Manager, not to exceed a total cost of $1,500.00 per year. The Commission may pay for the Manager to be a member of other professional organizations that the Commission agrees are necessary and desirable as authorized in advance.

## Section 12. Residence and Relocation Expenses

A. The Commission agrees to pay for Relocation Expenses in an amount not to exceed Ten Thousand Dollars ($10,000.00), provided that no less than three (3) quotes are obtained and that the best and most responsive and responsible quote is selected, as determined by the Manager.

B. The Manager agrees to make all attempts to find suitable housing within the City of Opa-locka, Florida. In the event he is unable to identify housing within the City of Opa-locka within a period of twelve (12) months following execution of this Agreement, the Manager agrees to reside within a radius often (10) miles from the city limits of Opa-locka, FL.

**Section 13.  Suspension**

The Commission shall have the authority to suspend the Manager with full pay and benefits pending investigation and a final employment decision made by the Commission, but only if a majority of the Commission members and the Manager agree; or in the alternative, after a public hearing, if a majority of the Commission members votes to suspend the Manager for just cause. The Manager shall have been given written notice setting forth any charges giving rise to just cause at least five (5) days prior to such hearing.

**Section 14. Indemnification**

The City shall defend, indemnify and pay all judgments or settlements in regard to any personal liability arising out of and in the scope of the City Manager's responsibilities, to the fullest extent authorized by Florida Statutes, and other laws and in accordance with the City of Opa-Locka Code of Ordinances, in addition to any insurance purchased by the City. The City agrees to pay all reasonable litigation expenses of the Manager during the pendency of proceedings, only if actions were taken in the course and scope of the City Manager's employment.

**Section 15. Bonding**

Employer shall bear the full cost of any fidelity or other bonds required of the Employee under any law or ordinance.

**Section 16. Other Terms and Conditions of Employment**

The Employer, only upon agreement with Employee, shall fix any such other terms and conditions of employment, as it may determine from time to time, relating to the performance of the Employee, provided such terms and conditions are not inconsistent with or in conflict with the provisions of this Agreement, City Charter, local ordinances or any other law.

**Section 17.  Notices**

Notice pursuant to this Agreement shall be given by depositing in the custody of the United States Postal Service by certified mail return receipt, or any other certified delivery service showing confirmation of process delivery and directed to the City Mayor and Attorney as to the City. And, directed to the City Manager as to the City Manager.

**Section 18. Entire Agreement**

The text of this document shall constitute the entire Agreement between the parties, except as may be amended in writing by the parties hereto. All provisions contained in this Agreement are subject to and conditioned upon compliance with the Charter, the County Code, the Administrative Code. and all statutes, laws, constitutional provisions and other County ordinances, regulations, resolutions and policies. The Charter, the County Code. the Administrative Code, and all such statutes, laws, constitutional provisions and other County ordinances. regulations. resolutions and policies shall take precedence over any part or portion of this Agreement, any other provisions of this Agreement to the contrary notwithstanding.

6

Any terms and conditions not specifically addressed in this Agreement shall be deemed to be addressed in the City's Personnel Rules, to the extent there is no conflict with this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to have been executed on behalf of each as of the date and year first above-written.

**MANAGER:**

_____
John E. Pate

**THE City:**

City Commission of Opa-Locka, a political subdivision of the State of Florida:

By: _____
                    City Mayor

Attest:

_____
Clerk of the City Commission

_____
City Attorney

# EXHIBIT B

LAW OFFICE OF MENACHEM MAYBERG

Mayor And City
Commission

City of Opa Locka

City of Opa Locka
780 Fisherman St, Fourth Floor
Opa Locka, FL 33054

Jose Arrojo
Executive Director
Miami Dade
Commission on
Ethics

Re: CITY MANAGER JOHN PATE
REQUEST FOR WHISTLEBLOWER PROTECTION

   Dear Mayor, City Commission and Mr. Arrojo:

     This firm represents City Manager John Pate who is requesting Whistleblower Protection pursuant to Florida Statute Chapter 112.3187.

     As affirmed by his signature on this written complaint, Mr. Pate is once against reporting and confirming that he has reported malfeasance and misconduct, as well as his participation in ongoing investigations of same.

     Specifically, Mr. Pate has previously reported being given direction by elected officials on more than one occasion, including former Mayor Pigatt to take personnel action with regard to Police Personnel and other employees in violation of the City Charter.

     In recent days, Vice Mayor Taylor and others have attempted to coerce and improperly influence Mr. Pate with regard to an ongoing police and personnel matter relating to an investigation and personnel decisions involving a relative of the Vice Mayor and police officer. Vice Mayor Taylor has threatened to terminate Mr. Pate, the only reason clearly being if the Manager did not violate the City Charter and numerous other regulations and laws and provide favorable treatment to the Vice Mayor's relative.

     Mr. Pate is available to fully cooperate in any investigation.

Very yours truly,

*Menachem Mayberg*
Menachem Mayberg Esq.

This affirms that I am seeking
chapter 112.3187 protection for
reporting malfeasance in this
written complaint

John E. Pate
_____

John Pate
City Manager

**Signature:**

**Email:**  john.edward.pate@gmail.com