United States District Court
for the
Southern District of Florida

| | |
|---|---|
| John Pate, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-20537-Civ-Scola |
| | ) |
| City of Opa-Locka, Defendant. | ) |

**Order**

This matter is before the Court on the Defendant City of Opa Locka's motion to dismiss. (ECF No. 17.) The City moves to dismiss Count II of the amended complaint as well as dismiss Pate's request for punitive damages. (*Id.*) Pate filed a response to the motion (ECF No. 20-1), and the City filed a reply memorandum in support of its motion (ECF No. 22). However, as an initial matter, the Court must—as it must always—assure itself that it has jurisdiction. After careful consideration of the record and the relevant legal authorities, the Court **remands** this case.

1. **Background**

While City Manager, John Pate ran headlong into City machinery. After allegedly enduring harassment, being subjected to improper influence, and refusing to participate in a cover-up, Pate was ultimately terminated in January 2022.

Nearly three years earlier, in September 2019, Pate was hired as City Manager for the City of Opa Locka. (Am. Compl. ¶ 3, ECF No. 15.) Pate signed an employment agreement ("Contract") with the City, which set out his daily duties and responsibilities. (*Id.* at ¶ 28.) But while working under this Contract, Pate was constantly harassed by the Mayor and various City Commissioners (whom the Court will refer to generally as the "Officials"). (*Id.* at ¶ 12.) In multiple administrative complaints, Pate averred that the Officials interfered with his daily job duties by directing him on how to handle City staff, including the hiring and firing of employees. (*Id.* at ¶¶ 13–14.) Among other things, the Officials allegedly interfered with Pate's search for a new Chief of Police by contacting candidates themselves and attempting to influence Pate's decision. (*Id.* at ¶ 15.) Further, the Officials directed Pate to fire the Police Chief because of his refusal to condone and participate in misconduct, such as giving special favors to the Officials' relatives and ceding political influence over the police department. (*Id.* at ¶¶ 17, 26.) The Officials also pressured Pate to

misappropriate taxpayer funds for "special events" and to inappropriately invest taxpayer dollars. (*Id.* at ¶¶ 20, 22.)

Pate's tenuous relationship with the City came to a head in January 2022. On January 11, 2022, the brother of the Vice Mayor—a City police officer—rear-ended a car while improperly using a police vehicle and driving without a valid license. (*Id.* at ¶¶ 35–37.) The Officials pressured Pate to ignore Officer Taylor's transgressions and City protocol. (*Id.* at ¶ 38.) Significantly, the Officials threatened termination if Pate did not end the investigations into Officer Taylor. (*Id.* at ¶ 21.) After refusing to condone Officer Taylor's misconduct, one Official advised Pate that he would be fired. (*Id.* at ¶ 42.) True to word, only one day later, Pate was fired on January 13, 2022. (*Id.* at ¶ 45.)

On January 27, 2022, Pate sued the City and various Officials in state court. (ECF No. 1.) That case was later removed to federal court, and Pate filed an amended complaint, only alleging state-law claims against the City. (ECF Nos. 1, 15.) Pate now sues the City for violation of Florida's Whistleblower Act and breach of contract, and Pate also seeks punitive damages. (ECF No. 15.)

## 2. Analysis

Before reaching the City's motion to dismiss, the Court must assure itself that it has jurisdiction. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). The operative amended complaint only alleges two claims, both under state law. However, at the time of removal, federal jurisdiction existed as Pate brought two claims pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1-2.) As federal jurisdiction is determined at the time of removal, Pate's post-removal amendment does not automatically divest the Court of subject-matter jurisdiction. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 n.2 (11th Cir. 2007) ("[T]he district court must look at the case at the time of removal to determine whether it has subject-matter jurisdiction. Later changes to the pleadings do not impact the court's exercise of supplemental jurisdiction."). Nonetheless, whether to *retain* supplemental jurisdiction over any state-law claims following a post-removal amendment remains in the Court's discretion. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002) ("The [district] court had discretion to retain jurisdiction over the state law claims even after [the plaintiff] amended the complaint to remove any federal cause of action.").

The decision of whether to retain supplemental jurisdiction following a post-removal amendment must balance the traditional 28 U.S.C. § 1367(c) analysis and the need to guard against forum shopping. Looking first to

section 1367(c), courts may decline supplemental jurisdiction over state-law claims if: (1) those claims raise a "novel or complex issue of State law"; (2) those claims "substantially predominate[]" over any federal claims; (3) the court dismissed all federal claims; or (4) in "exceptional circumstances, there are other compelling reasons[.]" *See* 28 U.S.C. § 1367(c). Moreover, courts also "take into account concerns of comity, judicial economy, convenience, fairness, and the like." *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001) (quoting *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).

      Here, only state-law claims remain. In general, "[s]tate courts, not federal courts, should be the final arbiters of state law." *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997); *see also Mirmelli v. City of Miami Beach*, No. 1:18-cv-23906, 2018 WL 8260875, at *4 (S.D. Fla. Dec. 3, 2018) (Ungaro, J.) (noting that state-law claims are "optimally decided" by state courts). Therefore, comity weighs in favor of remand, as does section 1367(c).

      Moreover, as this case is still in its infancy, judicial economy considerations also weigh in favor of remand. *See Rodriguez v. Page Mech. Grp. Inc.*, No. 2:20-cv-926-SPC-NPM, 2021 WL 1741018, at *1 (M.D. Fla. Mar. 10, 2021) (noting that where federal claims are dismissed early, the Eleventh Circuit "'strongly encourages' district courts to decline supplemental jurisdiction") (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51 & n.7 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction.").

      As to convenience, remand would not seem to inconvenience any party. This case was initially brought in state court, and there is no indication that the parties would be physically farther from the state court than they are from this Court. *See Mirmelli*, 2018 WL 8260875, at *5. Therefore, convenience considerations do not weigh in favor of or against remand.

      Last, the Court finds that fairness considerations are similarly neutral. While post-removal amendments that dismiss all federal claims raise concerns of forum shopping, there is no "blanket prohibition on remands" in such circumstances. *See Cohill*, 484 U.S. at 356 n.12. Moreover, here, there is no indication that Pate is forum shopping, as he never moved to remand this case after he filed his amended complaint. *See Pinkert v. Schwade*, No. 11-23324-CIV, 2012 WL 3962386, at *2 (S.D. Fla. Sept. 10, 2012) (Moreno, J.) (remanding the case and holding that there was "no indication" that the plaintiff "omitted his federal claims in an effort to procure a remand" as no party "even raised the issue"). Therefore, the Court finds that fairness

considerations do not weigh in favor of retaining jurisdiction, as Pate's amended complaint was not filed with the sole purpose of manipulating the forum. *See Mirmelli*, 2018 WL 8260875, at *5 (noting that where a plaintiff files a post-removal amendment with the "apparent sole motivation . . . to prompt remand," remand may be inappropriate).

### 3. Conclusion

In sum, the balance of the factors set out above weigh in favor of remand. Therefore, the Court exercises its discretion and declines to continue exercising supplemental jurisdiction over the state-law claims that remain. As the Court does not retain supplemental jurisdiction, the Court **directs** the Clerk to **close** this case and take all necessary steps to ensure the prompt remand of this matter and the transfer of this file back to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County. All pending motions, if any, are **denied as moot**.

**Done and ordered** in Miami, Florida, on June 22, 2022.

_____
Robert N. Scola, Jr.
United States District Judge